## May Begley v. Anna Miller et al.

### Gen. No. 13,528.

INSURANCE—*right of insured to change beneficiary.* In fraternal benefit associations, the member whose life is insured has the right to change the beneficiary named in the certificate, but in the case of an ordinary life insurance policy such right does not exist, except as may be permitted by the terms of the policy, and then only upon substantial compliance with such terms. *Held,* in this case, which arose under an ordinary life policy, that a change of beneficiaries had not been effected.

Bill in equity. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed December 2, 1907.

WOLFNER, HEALY & YOUNG, for appellant; CHARLES R. YOUNG and THOMAS J. HEALY, of counsel.

ROGAN & STEVENS, for appellee; JOHN S. STEVENS, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a decree dismissing the bill of appellant for want of equity.

The claim is grounded on the contention that she is the beneficiary under a policy of insurance upon the life of her brother, John J. Begley, in the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin.

Appellee, Anna Miller, and John J. Begley were husband and wife at the time the policy of life insurance was issued, and Anna Miller, as Anna Begley, was the beneficiary named in the policy.

On February 6, 1906, Begley's wife, Anna, sued him in the Circuit Court of Cook county for divorce, and on the 28th of February thereafter a decree was entered granting her a divorce, with leave to resume her

Begley v. Miller.

maiden name of Anna Miller, and an allowance made
for alimony and solicitor's fees. The policy contained
a provision permitting the insured to change the name
of the beneficiary. On March 8, 1906, Begley, the in-
sured, requested the insurance company in writing to
change the name of the beneficiary from that of his
former wife to that of his sister, appellant, May Beg-
ley. The company replied under date of March 16,
1906, as follows:

"Yours of the 8th inst. received with request for
change of beneficiary. * * * We cannot make any
change in the policy or on our records until the policy
is received here" — Milwaukee — "so we return the
request herewith, which may be returned with the
policy." No other request for change of the name of
beneficiary was at any time thereafter made by Begley.
The policy was in the possession of Anna Miller at the
time of John J. Begley's death on October 1, 1906, she
having taken possession of it prior to her divorce.
Whether or not Begley demanded the policy from
Anna Miller after the divorce, with an intention of
sending the same to the company for the purpose of
eliminating her as beneficiary and substituting in her
place his sister, May Begley, becomes immaterial in
view of the subsequent actions and conduct of Begley
in relation thereto. After the divorce, so the evidence
discloses, Begley and his former wife continued in
friendly relationship toward each other. They met at
frequent intervals and talked of a reconciliation and
a remarriage. In fact, yielding to Begley's importun-
ities, his former wife had promised to remarry him on
condition that he would go to work, save some money,
and demonstrate his willingness and ability to support
and care for her as his wife. The letters in evidence
show that the spark of love in Begley's heart for his
former wife had not entirely died out and that it could
readily be rekindled. Her conduct tends to show that
she was willing to encourage Begley in his expressed de-
sire to resume his former matrimonial relationship with

her. He made no further attempt to secure the policy nor any effort with the company to have his former wife supplanted as the beneficiary. In contradiction to any further purpose on his part to change Anna Miller's relationship to the policy, Begley on April 30, 1906, paid the quarterly premium due March 31, 1906, and on July 30, 1906, paid the quarterly premium due June 30, 1906. The company gave Begley receipts for these two premiums and he delivered both of them to Anna Miller, who produced them upon the trial and they were received in evidence with the policy. Furthermore, Begley, in a seeming desire to relieve his former wife from any embarrassment which he thought might arise by her change of name, admonished her to have the company change her name in the policy to her maiden name, which she had resumed under the permission granted to her by the court in the decree of divorce.

The insurance company makes no contest on the claim, but by its answer avers its willingness to pay whichever of the two claimants may be legally entitled to receive the amount of the insurance as beneficiary, or to pay the amount due into court, so that the court may award it to the claimant who shall be adjudged entitled to it.

In fraternal benefit associations the member whose life is insured has the right to change the beneficiary named in the policy but in the case of an ordinary life insurance policy such right does not exist except as may be permitted by the terms of the policy, and then only upon substantial compliance with such terms. Martin v. Stubbings, 126 Ill. 387.

We do not regard this case as coming within the class of cases where the insured has done all he reasonably can to bring about a change in the name of the beneficiary, and where, through no fault of such insured, the change has not been fully consummated. Nor one where, through the interposition of others over whom he has no power of control, his desire and wish to

formally have changed the name of the beneficiary have been thwarted. The provision in the policy in relation to a change of beneficiary is found in clause 5, and is that "the insured, subject to the rights of any assignee, may * * * change beneficiary or beneficiaries, at any time during the continuance of this policy, by filing with the company a written request accompanied by this policy, such nomination or change to take effect upon the endorsement of the same on the policy by the company."

The right to change the beneficiary, while permitted by the policy, is limited to its terms, a substantial compliance with which cannot be dispensed with.

Freund v. Freund, 218 Ill. 199, states the doctrine on this subject, which in its application to this case inhibits our holding that any change of beneficiary was effected.

Waiving all other questions argued by counsel, we deem it sufficient to rest our decision upon the ground of the plain intention of the insured, evidenced by his actions, not to change the beneficiary. True it is that Begley evidenced, March 8, 1906, a few days after his wife had divorced him for his own fault, and may be while smarting under the humiliation following the divorce, his intention to deprive his divorced wife of all interest in the policy and vest such interest in his sister, the appellant. In an effort so to do he, on that day, wrote the company. Not having the policy, he did not send it to the company with his letter, so that the change could be indorsed upon it by the company. The company replied on March 18, 1906, that the change could not be made until the policy was received by it for indorsement of such change of beneficiary. Begley then let the matter of change drop. He never after that had any communication with the company relating to a change in favor of appellant or anybody else. But, on the contrary, he thereafter paid two quarterly installments of premiums due on the policy and gave the receipts of the company therefor to Anna Miller,

the beneficiary. These actions are inconsistent and wholly irreconcilable with the contention that he had done all he could to have the beneficiary changed in favor of appellant. His conduct can only be accounted for upon the theory that he had abandoned his expressed intention of making a change and was satisfied that the policy should remain as it was originally written, and from which it was in fact never changed, and that in apparent furtherance of such desire he supplied Anna Miller with evidence of the continued payment of premiums for six months thereafter, thereby putting her in possession of evidence sufficient to prove, in the event of his death, that the policy was in force, which, with the policy already in her possession ready to surrender to the company, would enable her to collect the amount of its indemnity. Every step taken by Begley after his receipt of the answer of the company to his request for a change of beneficiary not only shows that he abandoned all further effort to make the change requested, but demonstrates that it was his intention that the policy should remain payable to his divorced wife, Anna Miller. This payment of premiums and delivery of the receipts therefor to Anna Miller is the strongest kind of proof, with the evidence of their friendly relationship, that he was intentionally keeping the policy in force for her sole benefit.

The decree of divorce in no way affected the rights of the divorced wife in the policy as the beneficiary named in it, or her authority to demand and receive the amount payable in virtue of its terms.

The fact that the decree of divorce ordered Begley to pay Anna Miller alimony gave her an insurable interest in his life. This insurable interest would continue at least during the time the alimony was payable under the decree. There is no proof in the record impeaching the decree in this respect. As said by the court in Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457: "We do not hesitate to say, however, that a

policy taken out in good faith, and valid at its inception, is not avoided by the cessation of the insurable interest unless such be the necessary effect by the provisions of the policy itself.''

The decree of the Superior Court dismissing the bill for want of equity. is without error, and is therefore affirmed.

*Affirmed.*